IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HAMBURGER VERSICHERUNGS - AG (iGR),

Plaintiff,

vs.                                        No.  CIV-03-285 KBL/LAM
IN ADMIRALTY

THOMAS C. WIMBER and
JOHN L. MUNZENMEIER,

Defendants.

## RESPONSE TO PLAINTIFF'S MOTION FOR BIFURCATION AND STAY OF DISCOVERY

Defendants Thomas C. Wimber ("Wimber") and John L. Menzenmeier

("Munzenmeier"), by and through their attorneys of record, submit this response to plaintiff's

motion to bifurcate the declaratory judgment action from Wimber's counterclaims and stay of

discovery.[1]

### I.      Introduction.

Hamburger requests this Court to bifurcate the declaratory judgment action from the

counterclaim.  Hamburger further asserts that after the matters are separated, the Court should

proceed first with the declaratory judgment claim to resolve the underlying issue of coverage.

However, by doing so, the defendants' constitutional right to a trial by jury will be violated

because of equitable injunction by way of the Court's findings of fact on the equitable issues

prior to resolution by a jury of the legal issues.  Compounding this fact is that, contrary to

---

[1] It is unclear from plaintiff's motion whether it intends only to move for bifurcation of the bad faith and breach of contract counterclaims or the counterclaim in its entirety.  For purposes of argument and to preserve objection thereto, defendants respond to the motion as if it seeks to bifurcate the entire counterclaim.



Hamburger's contention, there is no need to resolve the underlying coverage issue prior to a trial on the issues that are not based in contract. Hamburger also fails to meet its burden to show any basis for separating these trials under Rule 42(b), Fed. R. Civ. Pro. As a result, the motion must be denied in its entirety.

## II.    Statement of Underlying Facts.

This lawsuit, comprised of the declaratory judgment action and the counterclaim, is based upon a common thread of facts, which, woven together, demonstrate not only the failure of the declaratory judgment action, but the validity of Wimber's claims. On March 6, 2003, Hamburger filed its Complaint for Declaratory Judgment to request the Court to determine the rights of the parties to a disputed contract for marine insurance in response to a claim by Wimber for the loss of his ship, the Sea Lion, when it sank in the ocean off the coast of Florida. Munzenmeier was identified in the claim as a lienholder of the Sea Lion. Wimber and Munzenmeier answered the complaint on April 21, 2003, and counterclaimed for bad faith, breach of contract, violation of the New Mexico Unfair Practices Act, violation of the New Mexico Unfair Insurance Practices Act and prima facie tort.

In March 2002, Wimber submitted an application to obtain marine insurance coverage for the Sea Lion. Along with his application, he submitted a report of a survey performed on the Sea Lion which recommended certain repairs to be made as well as a Letter of Compliance certifying that the repairs were completed. Hamburger accepted the material and issued hull and machinery coverage for the Sea Lion from May 16, 2002 through May 16, 2003. As a condition to the contract, it was warranted that the ship was seaworthy[2] at the inception of the insuring agreement

_____

[2]"Seaworthy" is defined in part in the contract as "fit for the Vessel's intended purpose."

and that failure to maintain it in seaworthy condition would void the insuring agreement from the inception.  During the period of coverage, on December 29, 2002, the Sea Lion sank as a result of hull damage and was declared a constructive total loss for which a claim was made.

Instead of paying the claim and without notifying Wimber, Hamburger conducted an investigation of the Sea Lion under the ruse that it was investigating the facts and circumstances of the December 29, 2002, incident.  However, instead of investigating the damage to the hull and the facts and circumstances of why it sank, Hamburger focused the investigation on reasons why it could void the insurance agreement.  The investigation centered upon minor issues such as allegedly inoperable light bulbs and exposed wires  matters which did not pertain to the incident itself, but to whether the ship was seaworthy.  After a finding by Hamburger's investigator that the Sea Lion was not seaworthy, Hamburger denied the claim stating that the unseaworthiness of the Sea Lion rendered the insurance agreement void; thus excusing Hamburger from fulfilling its contractual obligations to Wimber.  Defendants believe that the evidence will show that Hamburger has a history of accepting money for insurance and then denying claims on the basis that the ships are not seaworthy.

The above facts go to the heart of not only the declaratory judgment action and the defense against the declaratory judgment action, but also to establish the basis for the counterclaim.

### III.    Separation of Trials would Deprive Defendants of their Right to a Trial by Jury.

This Court has ordered that defendants are entitled to a trial by jury on their counterclaim.  *See* Memorandum Opinion and Order, p. 2, filed on or about August 11, 2003.  Consequently,

this matter involves both legal issues to be tried before a jury and equitable issues to be tried
before the Court. Hamburger proposes not only to separate the declaratory judgment action from
the counterclaim pursuant to Rule 42(b), but also that trial of the declaratory judgment action
should take priority.   The factual issues comprising the declaratory judgment action are identical
to defendants' claim for breach of contract. Resolution of one, resolves the other. Consequently,
separation of the matters violates the defendants' Constitutional rights under the Seventh
Amendment to a jury trial.   If the matters were separated as Hamburger proposes, the result
would be an equitable injunction on defendants' legal claims, particularly, the breach of contract
claim. The determination of this Court on the equitable issues prior to a trial by jury on the legal
issues would "operate either by way of res judicata or collateral estoppel." *Beacon Theatres, Inc.
v. Westover*, 359 U.S. 500, 504, 79 S.Ct. 948, 953 (1959).

In *Beacon Theatres*, previously recognized by this Court in its order of August 11, 2003,
the United States Supreme Court ruled that separating equitable issues from legal issues pursuant
to Rule 42(b) and trying the equitable issues first is reversible error.  *Id.*  The Court states, "...the
use of discretion by the trial court under Rule 42(b), to deprive Beacon of a full jury trial on its
counterclaim and cross-claim, as well as on [the] plea for declaratory relief, cannot be justified.
Under the Federal Rules the same court *may try both legal and equitable causes in the same
action*." *Id.*, 359 U.S. at 508, 79 S.Ct. at 955.  Emphasis added.

Applying *Beacon Theatres*, the Tenth Circuit has also recognized and preserved a party's
fundamental right to a trial by jury. *AG Services of America, Inc. v. Nielsen*, 231 F.3d 726 (10th
Cir. D.N.M. 2000). In *AG Services*, the equitable and legal claims were simultaneously tried. *Id.*
231 F. 3d at 729. After the jury made findings of fact on the legal claims, the trial court issued

-4-

its own findings of fact on the equitable issues. *Id.* The Tenth Circuit, relying on the Seventh Amendment of the United States Constitution, ruled that when the jury verdict reflects the resolution of a common factual issue to both the equitable and legal issues, the trial court may not ignore that determination and it is "immaterial whether...the district court is considering equitable claims with elements different from those of the legal claims by which the jury has decided." *Id.*, 231 F.3d at 732. In deciding the equitable claims, the trial court is therefore bound by the jury's findings on the legal claims. *Id.* When a trial court disregards the jury's findings, the trial court collaterally estops resolution of the legal issues, thus, depriving the party of his right to a jury determination of all issues common to the legal and equitable claims. *Id.*, 231 F.3d at 731.

Applying *Beacon Threatres* and *AG Services* to this case, this Court must preserve defendants' right to a jury trial on its breach of contract claims. Additionally, there are substantial factual issues that overlap between the counterclaims and the declaratory judgment. Consequently, to avoid reversible error and to preserve the defendants' right to a jury trial, The Court must not separate the trials.

## IV.     Hamburger did not Meet its Burden under Rule 42(b) to Establish A Basis for Separate Trials.

Pursuant to Rule 42(b), Fed. R. Civ. Pro., the Court has discretion to separate trials when doing so will be conducive to expedition and economy, will further convenience and will avoid prejudice. In *Vincoy v. United States*, 1998 WL 1668877, *2 (D.N.M. 1998) (J. Conway), the district court was not convinced that in a medical malpractice case, the child's tragic condition and "heart-wrenching" testimony about a severely brain damaged four-year-old child was

prejudicial enough to warrant separation of the liability and damages phase of the trial. The trial court reasoned that the jury would hear the same testimony in the liability portion of the trial. *Id.* The trial court further reasoned that separating trials would not favor judicial economy because the case was not complex. *Id.* at *3. Consequently, unlike a "nine-defendant asbestos case" or "consolidation of more than forty cases against numerous electronic manufacturers," Judge Conway considered the case to be a "relatively straightforward medical malpractice case" for which there were not "any significant savings of judicial resources by conducting two separate trials." *Id.* Instead, the trial court considered that separate trials would cause delay and inconvenience the parties and witnesses, many of whom would have to testify at both trials, increasing travel time for out of town witnesses and the parties. *Id.*

Unlike the defendants in *Vincoy* whose request for separate trials was based upon unfair prejudice and judicial economy, Hamburger does not set forth any reasons why bifurcating these claims will be expeditious and economical, how bifurcation will promote convenience to the parties and the Court or how it will avoid prejudice. What is clear from Hamburger's motion is that it feels that litigating the declaratory judgment action and the compulsory counterclaim, that defendants had to assert or waive, together creates an "endurance contest" which presents Hamburger with a more time consuming and potentially expensive litigation than it "bargained for in filing a simple Complaint for Declaratory Judgment." Motion to Bifurcate pp. 3 and 4. However, bifurcating the issues will create an even more time consuming and expensive endurance contest by requiring the parties to conduct two separate sets of discovery on the same issues and by requiring the parties, like the England-based Hamburger, as well as potential witnesses who reside outside the State of New Mexico, to incur greater expense to testify in two

-6-

separate trials and to submit to at least two different sets of depositions--one to establish or assist

in the defense that marine insurance exists and the other, assuming discovery is stayed if two

separate trials will occur, to establish the facts alleged in the counterclaim.

Additionally, judicial economy will not be served by separating these trials. As

Hamburger concedes in its motion, this case is not complex. Motion to Bifurcate, pp. 3 and 4.

Except for the fact this case is brought in admiralty, it is a "relatively straightforward" insurance

coverage and bad faith lawsuit. *Fincoy* at *3. This is not a situation involving multiple plaintiffs

or defendants or claims that number in the dozens. Moreover, the issues are not easily separable.

*See Fincoy* at *2. Both the declaratory judgment action and the counterclaim involve the same

factual premise–that Wimber did or did not misrepresent the condition of the Sea Lion, that the

Sea Lion was seaworthy at all material times, that Hamburger accepted the initial survey and

Letter of Compliance, that Hamburger surreptitiously conducted a survey for the sole purpose of

denying coverage, and that Hamburger denied coverage. As such, Hamburger has failed to meet

its burden to show under any scenario provided for in Rule 42(b) why this Court should separate

these trials.

## V.    The Counterclaim does not Depend Upon the Prior Resolution of the Declaratory Judgment Action.

Hamburger's argument that the declaratory judgment action must be resolved prior to the

bad faith and breach of contract actions does not take into account that Wimber's counterclaim,

with the exception of the breach of contract claim, is independent of the  underlying coverage

issue. In its counterclaim, Wimber pled contractual bad faith **and** tortious bad faith, i.e. "failing

to act toward Wimber in a manner consistent with its obligations to deal fairly and in good faith

with its insureds." Answer and Counterclaim p. 15.   In New Mexico, an insurer's duty to act in good faith in its relations with an insured, including a duty to make a determination of whether it provided coverage for an accident which gave rise to an action against the insured does not require the insurer to bring to a conclusion a declaratory action to determine if coverage exists before trial in the tort action by the injured party against the insured. *American Employer's Insurance Company v. Crawford*, 87 N.M. 375, 379, 533 P.2d 1203, 1207 (1975). *See also Doylestown Electrical Supply Company v. Maryland Casualty Insurance Company*, 942 F. Supp. 1018, 1019-1020 (E.D. Penn 1996) (under Pennsylvania law, a claim for bad faith brought pursuant to statute is a separate and distinct cause of action and not contingent on resolution of the underlying breach of contract claim).

Hamburger cites *Reliance Insurance Company v. Wilson*, 1990 WL 751025, *1 (N.D. Cal. 1990), which held that in a **limited circumstance**, the underlying coverage action must be resolved prior to litigation of the bad faith claim. *Id.* In *Reliance*, the plaintiff insurance company filed a declaratory judgment that a marine insurance policy was void and unenforceable. *Id.* The defendant answered and filed three counterclaims involving breach of contract, malicious prosecution and bad faith. *Id.* The plaintiff subsequently filed a motion to bifurcate trial on the second and third counterclaims from trial on the declaratory judgment action. *Id.* At the outset, the parties and the Court agreed that bifurcation of the breach of contract claim was not necessary since that claim could be resolved by decision on the coverage issue. *Id.*[3]  However, with respect to the bad faith counterclaim, the court reasoned that if the

---

[3]The breach of contract claim raised no new issues beyond those raised in the declaratory judgment. For example, if in the underlying action the court found that the policy was void and unenforceable, then plaintiff had no obligations to breach. If, however, in the underlying action

underlying action resulted in a finding that no policy existed, there could be no bad faith claim. *Id.* Clearly, the court analyzed the counterclaim as one based in contract, but it is unclear whether the defendant's counterclaim also contained tortious bad faith. However, like New Mexico, California courts recognize that an insurance company can be liable to its insured for tortious bad faith despite the fact that the insurance contract does not provide for coverage. *Whiteside v. Florists' Mutual Insurance Company*, 2001 WL 1646862, *1 (9th Cir. Cal. 1991). Under that scenario, a bad faith claim may exist notwithstanding the lack of contractual coverage. *Id.* Consequently, if the defendant in *Reliance* pled tortious bad faith, it is probable that the ruling would have been different with regard to the bad faith counterclaim. Since Wimber pled tortious bad faith, his bad faith claim in that context is not prohibited from proceeding forward in conjunction with the declaratory judgment action because its viability is not dependent upon resolution of the underlying claim. Likewise, the claims for violation of the New Mexico Unfair Practices Act, violation of the New Mexico Unfair Insurance Practices Act and prima facie tort are not contractual in nature and do not rely upon resolution of the underlying contractual claim in order to proceed at the same time as the declaratory judgment action.

Additionally, consistent with *Reliance*, Wimber's claim for breach of contract can exist simultaneously with the underlying coverage issue. The two actions are really one in the same. Applying *Reliance*, there are no new issues raised by the breach of contract claim which require resolution of the underlying coverage claim prior to its initiation.   As such, Wimber's entire

---

the court found that the policy was unenforceable, then defendant's breach of contract claim will have been resolved in the affirmative.  *Id.*

counterclaim, with perhaps the exception of the bad faith contractual claims, do not depend upon resolution of the coverage issue and may proceed simultaneously therewith.

### VI.   Discovery Should not be Stayed.

Hamburger claims that defendants have submitted discovery that is "intentionally intrusive, abusive and intended to impel Plaintiff to make a commercial decision to abandon the litigation rather than become bogged down in the morass that Defendant is seeking to create." Motion to Bifurcate, 4.   Foremost, most of defendants' interrogatories contained in Exhibit A of Hamburger's motion to bifurcate are specifically directed to the declaratory judgment action.  In fact, out of the interrogatories propounded, only Interrogatory Nos. 2 and 3 specifically mention the counterclaim.  The requests for production contained in Exhibit B of Hamburger's motion to bifurcate also pertain to the declaratory judgment action and Hamburger's valuation of the claim in question as well as its history for valuing like claims.

In large part, the propounded discovery seeks information that is required to be disclosed under Rule 26, Fed. R. Civ. Pro. without awaiting a discovery request by the defendants.  The matters contained in this lawsuit are not exempted from the required disclosures under Rule 26(a)(1)(E).   Rule 26(b)(1) provides for "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party" within certain limitations set by court order.  *See* Rule 26(b)(2)(i)(ii) and (iii).  There has been no showing that the limitations set forth in 26(b), are applicable here.  Moreover, the discovery is relevant.  Litigation of the declaratory judgment action in this case will also require the defendants to defend that claim.  In doing so, the defendants are entitled to propound discovery regarding its defenses, such as seaworthiness of the Sea Lion at all material times, the surreptitious investigation by Hamburger after the claim was

made and the history of Hamburger in denying claims for ships that are allegedly not seaworthy--
a matter relevant to defendants' punitive damage claim for breach of contract and bad faith. *See*
Response to Plaintiff's Motion to Dismiss Counterclaim, Strike Demand for Jury, and Strike
Demand for Punitive Damages and Attorneys' Fees, p. 10, citing *New York Marine and General
Insurance Company v. Tradeline*, 1999 WL 1277244 *4 (S.D.N.Y. 1999). These same facts
which comprise the defense to the declaratory judgment action also help to establish the
counterclaim. Consequently, the propounded discovery is relevant and discoverable under Rule
26(b)(1).

Furthermore, Hamburger has not set forth any basis by which the Court must stay
discovery if the matters are not bifurcated. If the Court denies Hamburger's motion to separate
trials, there is no need for the Court to exercise its discretion to limit or stay discovery and doing
so would only prejudice the defendants. The discovery should be answered at this time and
defendants should be allowed to follow up that discovery as necessary in the parameters of Rule
26.

WHEREFORE, defendants pray this Court will deny Hamburger's motion in its entirety
and for any further relief this Court deems just and proper.

MADISON, HARBOUR, MROZ & BRENNAN, P.A.

By

Shannon A. Parden
Kimberly A. Middlebrooks
Post Office Box 25467
Albuquerque, NM 87125-5467
(505) 242-2177

*Attorneys for Defendants*

-11-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was mailed this 15th day of September 2003 to:

Paul J. Rubino, Esq.
1155 Commerce Loop #B
Las Cruces, NM 88011-8213

Steven E. Goldman, Esq.
Goldman & Hellman
315 S.E. 7th Street, Suite 200
Fort Lauderdale, FL 33301

Madison, Harbour, Mroz & Brennan, P.A.

N:\2305\03001\PLG\KAM RESPONSE MOTION BIFURCATE.wpd